# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES of AMERICA ) ) v. ) ) HENRY ZAMBRANO RODRIGUEZ, ) ) Defendant. ) ) | Criminal No. 06-40015-FDS |

## MEMORANDUM AND ORDER ON
## PETITIONER'S MOTION TO VACATE UNDER 28 U.S.C. § 2255

**SAYLOR, J.**

Petitioner Henry Zambrano Rodriguez ("Zambrano") pleaded guilty in July 2007 to conspiracy to distribute cocaine and distribution of cocaine. He was sentenced to a term of imprisonment on November 21, 2008. Zambrano appealed his conviction, and the First Circuit denied the appeal in May 2010. In September 2010, Zambrano filed an amended motion to vacate judgment and sentence pursuant to 28 U.S.C. § 2255 on the grounds that (1) his plea was neither voluntary nor knowing and (2) there is a reasonable likelihood that he would not have pleaded guilty but for the ineffective assistance of counsel. The Court will now consider that motion, despite the fact that Zambrano was deported to his native Colombia in December 2010.[1]

---

[1] As petitioner set forth in his letter to the Court dated December 20, 2010, deportation does not moot a § 2255 petition to vacate because petitioner still must "carry through life the disability of a felon; and by reason of that fact he might lose certain civil rights," some of which severely impede his ability to return to the United States. *Fiswick v. United States*, 329 U.S. 211 (1946); *Carafas v. LaVallee*, 391 U.S. 234, 237-238 (1968) ("On account of these 'collateral consequences,' the case is not moot.") (internal citations omitted); *see also Raheman v. United States*, 2008 U.S. Dist. LEXIS 82702 (D. Mass. Sept. 29, 2008) (finding that deportation did not moot a challenge to the constitutionality of a conviction, a proposition that the government also conceded). In addition, because § 2255 "is broad with respect to the relief that may be granted," the Court need not require petitioner to re-file seeking a writ of *coram nobis*. *See Carafas*, 391 U.S. at 239.

For the reasons set forth below, the petition will be denied.

I.  **Factual Background**

In 2001, the Massachusetts State Police conducted an undercover investigation of Zambrano and his business in Fitchburg, called Atlas Travel.  During the time of observation, Atlas Travel did very little business, and Zambrano kept the door locked at all times.  On June 26, 2001, an undercover officer and a confidential informant met with Zambrano and Cabrera (a co-defendant in the criminal case) at Atlas Travel.  Zambrano opened the store, and Cabrera retrieved a package containing cocaine from a wastebasket inside.  Cabrera, the undercover officer, and the confidential informant then went into a backroom to inspect the cocaine.  Zambrano told the undercover officer and the confidential informant that they could not return the cocaine because they had inspected it.  Another undercover officer arrived with the buy money, which Cabrera took from him in exchange for the cocaine.

As a result of this investigation, in 2006 Zambrano was charged with (1) conspiracy to distribute cocaine, in violation of 21 U.S.C. §846, and (2) distributing cocaine, in violation of 21 U.S.C. §841(a)(1).  On June 29, 2006, the United States Magistrate Judge issued an order of pre-trial detention, noting, among other factors, that "these Defendants face a substantial likelihood of deportation following completion of any sentence imposed." (Mem. and Dec. on Mot. for Det'n. at 6).  On September 19, this Court denied Zambrano's motion to revoke the detention order, also finding, among other things, "a substantial likelihood that defendant will be convicted of the crimes with which he is charged and that deportation will likely follow a significant prison sentence." (Order on Mot. for Rev. at 3).  Attorney Charles Rankin represented Zambrano at both of those proceedings.

Attorney Carl Donaldson took over the petitioner's defense in November 2006. As of December 13, 2006, attorney Paul Mahoney temporarily represented petitioner due to attorney Donaldson's suspension from the practice of law. Attorney Donaldson filed a notice of appearance on May 21, 2007, resuming his representation of petitioner. On May 31, Zambrano wrote a letter to the Court expressing frustration in the lack of contact between him and attorney Donaldson and inquiring about Donaldson's status. (Pet. Letter of 5/31/07).

On July 18, the Court held a hearing pursuant to Fed. R. Crim. P. 11, at which Zambrano entered a plea of guilty to both counts of the indictment. At the change of plea hearing, Zambrano was asked if he understood "what's going on here today?" (Rule 11 Hrg. Tr. at 6). He said that he did. (*Id.*). When asked if there was "any doubt in [his] mind on that subject," Zambrano said, "No." (*Id.*). The Court also asked Zambrano whether he "had a chance to discuss the charges against [him] and the facts and circumstances of [his] case with Mr. Donaldson as [his] lawyer?" (*Id.* at 9). Zambrano responded that attorney Donaldson had come to visit him and told him about the evidence against him. (*Id.*). The Court then asked again whether Zambrano had a chance to discuss the evidence and the charges against him with his lawyer. (*Id.*). Zambrano said that he had. (*Id.* at 10). The Court asked Zambrano whether he was "pleading guilty of [his] own free will, because [he was], in fact, guilty?" (*Id.* at 11). Zambrano responded, "Yes." (*Id.*). The Court further asked Zambrano whether he understood that the Court would be required to sentence him to at least five years in prison, and he replied, "Yes. Yes." (*Id.* at 12). The Court asked if he understood "that by pleading guilty, it may affect [his] immigration status, including the possibility of deportation or removal from the United States?" (*Id.* at 13). Zambrano said, "Yes." (*Id.*). The Court concluded that portion of the

colloquy by asking Zambrano if he understood "all those possible consequences of [his] plea: time in prison, a fine, a term of supervised release, immigration consequences, forfeiture consequences, and a special assessment?" (*Id.*). Zambrano answered, "Yes." (*Id.*). Zambrano now avers that he gave those responses only because "he was nervous and did not know what was expected of him" and/or "Donaldson told him to do so." (Pet. Am. Memo. at 14).

On October 10, 2007, attorney Donaldson filed a motion to continue the sentencing. The motion was based primarily on the grounds that, in counsel's opinion, Zambrano "had some cognitive issues that are serious enough that the Court should be aware of with respect to considerations in Aid of Sentencing." (Mot. to Cont. Sent. at 1). Counsel noted that he and Zambrano's family had noticed these issues at the Rule 11 hearing and at Zambrano's interview with probation. (*Id.*). Counsel sought the opportunity to have a psychiatric evaluation performed. (*Id.*; Mot. for Funds).[2]

The Court granted the request for funds. In January 2008, psychologist Adriana Guiterrez, Ph.D., conducted an evaluation of Zambrano. The report concluded, among other things, that

> [Zambrano] is a man who has very little cognitive abilities, memory impairment, poor organizational skills, and limited academic skills . . . [and] [w]hen things become challenging or difficult for him to understand, he can become easily overwhelmed and confused. When this occurs, [Zambrano] avoids the situation rather face it head on. He is content to allow others to take over for him. (Pet. Am. Memo. at 6).

On March 25, 2008, Zambrano filed a motion to appoint new counsel accompanied by a letter to the Court detailing his frustrations with attorney Donaldson. In that letter, Zambrano

---

[2] Later in October 2007, Zambrano sent a letter to the Court complaining about attorney Donaldson, expressing doubts as to whether he was performing his duties ethically, or at all. (Pet. Letter of 10/31/07).

wrote, "I am confused to what I have actually pleaded guilty to in court[.]  I was told to answer yes to the questions at a court appearance from the Judge, my Attorney Donaldson told me to plead guilty without hearing the evidence against me."  (Pet. Letter of 3/28/08).  The Magistrate Judge granted Zambrano's motion and re-appointed attorney Charles Rankin.

On November 21, the Court held a sentencing hearing for Zambrano.  At that hearing, Attorney Rankin read a prepared statement from Zambrano that read, in part, "I would like to give my deepest apologies to the Court and my family as well. Your Honor, the poor decisions which I've made not only affected me as an individual, but, in effect, has affected my community along with the people I care about most."  (Sent. Hrg. Tr. at 9).  The Court sentenced Zambrano to a term of imprisonment of 60 months.

Zambrano appealed his conviction on the ground that this court violated his right to due process by failing to hold a competency hearing *sua sponte* before accepting his guilty plea.  The First Circuit denied the appeal on May 3, 2010.  (Mandate of USCA, Case No. 08-2511).  The First Circuit concluded that this Court did not err in failing to order a competency hearing *sua sponte*, and found that Zambrano's *pro se* filings demonstrated "an understanding of the proceedings and ability to participate in them and to communicate rationally" and "understood the case against him."  (*Id.*).

Zambrano subsequently filed an amended motion to vacate judgment and sentence pursuant to 28 U.S.C. § 2255.  As grounds for relief, Zambrano asserts that (1) his plea was neither voluntary nor knowing, and (2) there is a reasonable likelihood that he would not have pleaded guilty but for the ineffective assistance of counsel.

In December 2010, before this Court ruled on the petition, Zambrano concluded his

sentence and was deported to his native Colombia. Zambrano's counsel, however, submitted a letter expressing his client's desire to seek a ruling on his § 2255 regardless. (Pet. Let. of 12/20/10).

On September 5, 2012, Carl Donaldson was disbarred from the practice of law by the Supreme Judicial Court of Massachusetts.

## II. Legal Background

### A. Timing of Challenge to Plea

The Due Process Clause of the Fifth Amendment requires that a plea of guilty be both voluntary and knowing in order to be valid. Rule 11 was enacted to protect this constitutional right, and explicitly requires that the district court "inform the defendant of, and determine that the defendant understands . . ." a number of important facts and consequences, including "the nature of each charge to which the defendant is pleading" and "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1); *cf. McCarthy*, 394 U.S. 459 (interpreting the proper construction of Rule 11 prior to the quoted amended version). The rule requires that this exchange take place in open court. The Supreme Court has held that "representations of the defendant . . . as well as any other findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, while a strict adherence to the rule's procedures does not entirely insulate a guilty plea from constitutional scrutiny, it makes collateral attack substantially more difficult.

The First Circuit has held, in the closely related context of waiver of appellate rights, that a petitioner's challenge premised on "the validity of the waiver itself, not the Rule 11 colloquy,"

is subject to *de novo* review. *Sotirion v. United States*, 617 F.3d 27, 34 n.6 (1st Cir. 2010) (citing *United States v. Goodson*, 544 F.3d 529, 539 n.9 (3d Cir. 2008)). The First Circuit has not yet definitively extended the *Sotirion* ruling to challenges to the guilty plea itself, but it has suggested that the same reasoning would apply. *See United States v. Rodriguez-Morales*, 647 F.3d 395, 398 (1st Cir. 2011).[3] Here, although the respondent persuasively argues for a less-searching standard of review, the Court will review the constitutional validity of the petitioner's plea *de novo*.

### B. <u>Voluntary and Knowing Plea</u>

The Court must "[consider] all of the relevant circumstances surrounding [a plea]" to determine if it was indeed voluntary. *Brady v. United States*, 397 U.S. 742, 749 (1970). A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *See id.* at 755.

A guilty plea is made knowingly when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him," and with "a full understanding of what the plea connotes and of its consequence." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)); *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The Court's acceptance of a guilty plea after following Rule 11 procedures is a determination that the guilty plea is voluntary and knowing.

---

[3] The standard does not go so far as the "near-presumption" against granting a post-sentencing withdrawal of a guilty plea articulated in *United States v. Vonn*, 535 U.S. 55, 72 (2002), because the allegation here is one of a constitutional violation rather than a failure by the Court to abide by Rule 11 procedures (as in *Vonn*).

7

### C. Ineffective Assistance

#### 1. *Strickland* and *Padilla*

Claims for ineffective assistance of counsel under the Sixth Amendment must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, a petitioner must establish both (1) that his counsel provided deficient assistance and (2) that he suffered prejudice as a result. *Id.* at 687.

In *Hill v. Lockhart*, the Supreme Court applied *Strickland*'s two-part test to claims of ineffective assistance of counsel in the context of a guilty plea. 474 U.S. 52, 88 (1985). The Supreme Court held that "in the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58-59. The Court held that prejudice exists when there is "a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

More recently, in *Padilla v. Kentucky*, the Supreme Court held that providing incorrect advice, or a lack of advice altogether, concerning a clear deportation consequence of a guilty plea amounts to constitutionally deficient representation. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010). The Court further held that a petitioner nonetheless has to show that he would not have pleaded guilty but for the counsel's errors with respect to advising him of the immigration consequences of his plea. *Id.* at 1483.

## 2. Retroactive Application of *Padilla*

The Supreme Court declined to address whether the rule of *Padilla* applies retroactively to pleas, such as the one at issue, entered before it was announced. While some circuits have taken opposing views on this issue, the First Circuit has yet to decide the matter. In *United States v. Martinez*, Judge Gorton summarized the circuit split and concluded that there was a "developing consensus of federal courts in holding that *Padilla* announced a new rule of constitutional law and thus, under *Teague*, does not apply retroactively to convictions that were final at the time of its announcement." *United States v. Martinez*, 843 F. Supp. 2d 136, 138 (D. Mass. 2012). However, this Court, in an abundance of caution, will analyze the petitioner's ineffective assistance claim under the rule of *Padilla*.[4]

## III. Analysis

### A. Validity of the Plea

Petitioner contends that his guilty plea was neither voluntary nor knowing. This issue is related to, but distinct from, his previous appeal to the First Circuit challenging this Court's failure to order a competency hearing *sua sponte*, and therefore it is properly before the Court here. *Cf. United States v. Michaud*, 901 F.2d 5, 6 (1st Cir. 1990).[5] As described above, the determination that a guilty plea was voluntary and knowing is based on the totality of the circumstances. For the reasons set forth below, the Court finds that the petitioner's guilty plea

---

[4] Petitioner's claim would clearly have no merit under the First Circuit precedent before *Padilla*, which held that as a "'collateral consequence' of conviction, deportation was 'legally irrelevant, even as to an outright guilty plea.'" *United States v. Gonzalez*, 202 F.3d 20, 25 (1st Cir. 2000) (internal citations omitted).

[5] The First Circuit found that the facts presented "[did] not establish that the district court plainly erred in failing to *sua sponte* order a competency hearing." It did not determine whether the plea itself was voluntary and knowing. (Mandate of USCA, Case No. 08-2511).

was both voluntary and knowing.

Petitioner does not contend that he was threatened or promised anything to induce his guilty plea. Instead, he apparently contends that he pleaded guilty only because his lawyer told him to do so. However, simply advising a client to plead guilty, without some element of coercion, is not enough to render the subsequent plea involuntary. Furthermore, at the Rule 11 colloquy, petitioner answered affirmatively when the Court asked whether he was "pleading guilty of [his] own free will, because [he was], in fact, guilty?" (Rule 11 Hrg. Tr. at 11). He did not suggest or intimate any other reason for his guilty plea at that time. Accordingly, the Court finds that petitioner's guilty plea was voluntary.

Petitioner next contends that his guilty plea was not knowing because his mental health condition hindered his ability to understand the charges against him and what was transpiring at the Rule 11 hearing. Although, as noted above, the First Circuit's determination that this Court did not err in declining to order a competency hearing *sua sponte* did not conclusively determine that petitioner knowingly pleaded guilty, some of that court's underlying findings are informative. Chiefly, the First Circuit found that Zambrano's *pro se* filings demonstrated "an understanding of the proceedings and ability to participate in them and to communicate rationally," and that he "understood the case against him." (Mandate of USCA, Case No. 08-2511). These findings confirm the colloquy answers petitioner gave at the time of the plea, including affirmative answers to the following questions: "Do you believe you understand what's going on here today?" and "Do you understand all of those possible consequences of your plea: time in prison, a fine, a term of supervised release, immigration consequences, forfeiture consequences, and a special assessment?" The mental-health evaluation on which petitioner

chiefly relies to disprove this evidence does not conclusively establish otherwise. The mental-health evaluation did indicate that petitioner had "very little cognitive abilities" and "[could] become easily overwhelmed and confused" facing certain complex situations. (Pet. Am. Memo. at 6). However, the evaluation also indicated that "his reading skills [were] at an 8th grade level in Spanish," and the record shows that an interpreter was present at the Rule 11 hearing and all other relevant proceedings where petitioner appeared. *Id.* The transcript of the Rule 11 hearing also demonstrates that the Court proceeded through the colloquy very deliberately and took great care to ensure petitioner understood what was being asked and communicated.[6] Accordingly, the

---

[6] *See, e.g.,* Rule 11 Hrg. Tr. at 9-10:

> THE COURT: Have you had a chance to discuss the charges against you and the facts and circumstances of your case with Mr. Donaldson as your lawyer?
>
> THE DEFENDANT: He has come to visit me.
>
> THE COURT: Have you had a chance to discuss the charges against you and the facts of your case with him?
>
> THE DEFENDANT: He has shown me the evidence. He told me that he had the evidence.
>
> THE COURT: I want you to listen my questions and answer the question I'm asking you. Have you had a chance to talk about your case and the charges against you with your lawyer?
>
> THE INTERPRETER: Sorry, Judge. The interpreter doesn't understand what the defendant is saying.
>
> THE COURT: What I want to know, Mr. Zambrano Rodriguez, is whether you had a chance to talk about the charges against you with your lawyer?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And have you had a chance to talk with your lawyer about the evidence against you?
>
> THE DEFENDANT: He told me that there were –
>
> THE COURT: Never mind what he said. Have you had a chance to talk about the evidence with your lawyer?
>
> THE DEFENDANT: Yes.

11

Court finds that petitioner's guilty plea was knowing as well as voluntary.

### B. Ineffective Assistance of Counsel

Petitioner further contends that his guilty plea was invalid because he entered it without effective assistance of counsel. Specifically, he contends that counsel did not advise him that deportation was an almost certain consequence of his guilty plea. He contends that, had he been so advised, he would have elected to stand trial rather than plead guilty. As described above, to show ineffective assistance petitioner must establish both (1) that his counsel provided deficient assistance and (2) that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687.

Petitioner contends that attorney Donaldson never told him that pleading guilty would likely result in his deportation. He contends that, in fact, attorney Donaldson suggested to his family that a guilty plea was "the quickest way for [Zambrano] to regain his freedom," and was his "best chance for fighting deportation and obtaining his United States citizenship." (Pet. Rep. at Ex. Y and Z). It is undisputed that deportation was a virtually certain consequence of petitioner's conviction for the drug-trafficking crimes to which he pleaded guilty. *Padilla* holds that in such a situation, counsel is obligated to inform his client of those consequences, and failure to do so is constitutionally deficient assistance. 130 S. Ct. at 1482. The Court will assume for present purposes that Donaldson did not advise him correctly as to the likely deportation consequences. Accordingly, the Court finds that petitioner has met the first prong of the *Strickland* test.

That is not, however, the end of the inquiry. In order to be entitled to relief, petitioner must also show that he suffered prejudice as a result of the deficient assistance. In cases, such as this, involving a guilty plea, the petitioner must demonstrate a reasonable probability that he

would not have pleaded guilty, but for his counsel's deficient assistance. *Hill,* 474 U.S. at 59. Petitioner here contends that he indeed would have gone to trial had he known that he was almost certain to be deported as a consequence of pleading guilty.

Petitioner contends that he did not understand the deportation consequences of his guilty plea because of his counsel's incorrect and/or non-existent advice. However, his counsel was not the only source of information concerning immigration consequences. The detention order issued by the Magistrate Judge specifically referred to petitioner's "almost certain deportation after conviction." (Det. Ord. at 8). In denying petitioner's motion to revoke the detention order, this Court also referred to deportation as a "likely" result following any prison sentence. (Order on Mot. for Rev. at 3).

Petitioner contends that these statements did not amount to notice at the time of his plea because they were made years before the Rule 11 hearing and were unclear as to the consequences of a guilty plea specifically. However, at the Rule 11 hearing itself, this Court asked petitioner multiple times whether he understood the potential immigration consequences of his guilty plea, and petitioner indicated that he did. In one of these exchanges the Court specifically asked whether petitioner understood that by pleading guilty he faced "the possibility of deportation or removal from the United States." (Rule 11 Hrg. Tr. at 13). This evidence provides a strong indication that petitioner would have pleaded guilty regardless of whether attorney Donaldson had also notified petitioner that a guilty plea would likely result in his deportation.[7]

---

[7] As the government notes, some District Courts after *Padilla* have rejected ineffective assistance claims for lack of prejudice where the judge asked simply whether the defendant understood that his plea "may affect [his] ability to remain within the United States?" *See Ellington v. United States,* 2010 WL 1631497, *3 (S.D.N.Y. 2010).

13

Petitioner further contends that the evidence against him was not overwhelming, and would not have compelled him to plead guilty. It is true that the government lacked surveillance audio or video of the actual transaction, and petitioner did not physically exchange cocaine for money with the undercover officer. However, petitioner apparently concedes that the government could prove that he accompanied his co-defendant and an undercover officer to his travel agency, where he permitted a cocaine sale to take place; that he told one of the undercover officers "that the cocaine was non-refundable and that he had participated in a previous cocaine sale;" and that his travel agency did very little legitimate business. (Pet. Rep. at 13-14). This evidence—which petitioner does not contend he can disprove and only represents the pertinent core of the government's case—could quite easily lead a reasonable jury to convict petitioner of the crimes to which he pleaded guilty.

In short, the evidence against petitioner appeared to be overwhelming. Petitioner, like the overwhelming majority of defendants, elected to forego a trial in order to receive other benefits (such as a lighter sentence). The Court is not convinced that petitioner would have insisted on going to trial had counsel properly advised him about his likely deportation, nor is the Court convinced such a decision would have been rational. Petitioner accordingly has not established prejudice within the meaning of *Strickland*.

## IV. Conclusion

For the foregoing reasons, petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

                                                           /s/ F. Dennis Saylor
                                                         F. Dennis Saylor IV
                                                         United States District Judge

Dated: November 26, 2012